IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN BROOKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. |
| ) | |
| J. RICHARDSON, FNP-C, BRYANT McGEE, ) | |
| Registered Nurse, LESLEE BROOKS, Physician's ) | |
| Assistant, DR. E. HARBISON, Health Services ) | |
| Administrator, MELISSA SCHREIBER, Camp ) | |
| Administrator, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

Kevin Brooks, age 39, experienced severe abdominal pain while he was a federal prisoner living at a minimum-security work camp. He suffered acute appendicitis and, ultimately, a ruptured appendix—a life-threatening condition requiring urgent medical intervention—which went without appropriate medical attention for over two weeks despite his obvious need and persistent pleading for care. Due to the Defendants' actions, omissions, policies, procedures, practices, and failures to take reasonable measures to provide treatment for his serious medical needs, Plaintiff suffered pain, infection, complications, and permanent injuries. This is a *Bivens* action seeking compensatory and punitive damages.

1

## JURISDICTION AND VENUE

1. This is an action brought pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2. This court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(e)(1)(C) because defendants are officers or employees of the United States acting in their official capacity under color of legal authority, and Plaintiff resides in this judicial district.

## PARTIES

3. Plaintiff Kevin Brooks is a resident of Joliet, Illinois and is no longer in law enforcement custody.

4. At all times relevant to this suit, Defendants J. Richardson, FNP-C, Nurse Bryant McGee, Physician's Assistant Leslee Brooks, and Dr. E. Harbison were medical providers employed by the Bureau of Prisons in the Health Services Unit at Marion, which is responsible for providing appropriate medical care to prisoners housed at SCP Marion. All are sued in their individual capacity, and all acted under color of law and within the scope of their employment.

5. At all times relevant to this suit, Melissa Schreiber was camp administrator of SCP Marion and was responsible for care and custody of all prisoners at SCP Marion. Schreiber is sued in her individual capacity, and acted under color of law and within the scope of her employment.

6. Defendants Schreiber and Harbison were responsible for the establishment and implementation of the policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit.

## FACTS

7. In December of 2020, Plaintiff Kevin Brooks was a federal prisoner housed at SCP Marion, a minimum-security satellite work camp of the United States Penitentiary Marion operated by the Bureau of Prisons. As such the only option available to him for medical care was the Bureau of Prisons Health Services Unit.

8. On or about December 26, 2020, Plaintiff began experiencing sharp abdominal pain.

9. Plaintiff's abdominal pain continued as he exhibited obvious signs of distress forcing him to seek medical treatment and report his pain at the next available sick call opportunity.

10. He received no relief and his pain continued.

11. On or about Monday, December 28, Plaintiff described his pain to Defendant Nurse McGee. Defendant McGee did not physically examine Plaintiff, only provided him with Tylenol tablets.

12. On December 28, Defendant McGee failed to send Plaintiff to the hospital, and/or failed to communicate with a supervisor or physician, including to notify them that Plaintiff should be sent to the hospital, where competent medical providers would have properly assessed and treated the condition underlying his symptoms.

13. Plaintiff continued experiencing pain in his abdominal area, which worsened to the point that he could not sleep, but no medical provider followed up with him or saw him.

14. BOP records reflect that on January 5, 2021, Plaintiff was seen by Defendant J. Richardson, FNP-C, who listened to Plaintiff's abdomen and recorded hearing hypo-active bowel sounds.

15. Plaintiff's pain had not subsided and had continued and increased in intensity over the course of approximately ten days.

16. Other than listening to Plaintiff's abdomen, Defendant Richardson did not perform any examinations, did not palpate Plaintiff's abdomen, and did not request any diagnostic lab tests, an important first step in evaluating abdominal pain, to determine the cause of Plaintiff's symptoms. He did not consult a physician or any other medical provider.

17. On January 5, Defendant Richardson failed to send Plaintiff to the hospital, and/or failed to communicate with a supervisor or physician, including to notify them that Plaintiff should be sent to the hospital, where competent medical providers would have properly assessed and treated the condition underlying his symptoms.

18. Defendant Richardson erroneously concluded Plaintiff was suffering from constipation and provided him over-the-counter laxatives.

19. While still in Defendant Richardson's presence, Plaintiff took the first dose of the laxative. As he was walking away from sick call, Plaintiff vomited a gray and green substance. Richardson instructed Plaintiff to continue to the living area and return the next day if his symptoms did not improve. He made no record that Plaintiff vomited.

20. Subsequently Plaintiff's pain worsened to the point that he could no longer walk under his own power.

21. Between six and eight of his fellow prisoners carried him to sick call on a gurney where he was seen by Defendants McGee and Richardson, who failed to provide him proper treatment, provided him with no relief, accused him of having COVID-19, gave him Tylenol, and sent him away.

22. At that time, despite observing that Plaintiff was unable to walk, neither Defendant Richardson nor Defendant McGee recorded that they physically examined Richardson, performed any tests, ordered any labs, or consulted a physician or any other medical provider.

23. Both Defendants Richardson and McGee failed to send Plaintiff to the hospital, and/or failed to communicate with a supervisor or physician, including to inform them that Plaintiff should be sent to the hospital, where competent medical providers would have properly assessed and treated the condition underlying his symptoms.

24. Plaintiff was in such pain that he was unable to do anything but lie in bed for days. He was unable to perform his normal activities and could not perform his work assignments.

25. Defendant Schreiber, the camp administrator, and a correctional officer while performing a routine walk-through of Plaintiff's living area observed Plaintiff lying in bed in extreme pain; despite reassurances to Plaintiff that he would receive medical attention, no such attention was given to Plaintiff.

26. Plaintiff experienced ongoing debilitating pain, but he was not seen by any medical provider for days despite his obvious suffering and repeated pleas.

27. Plaintiff continued to experience pain, bloating, and cramping, began to feel extremely cold, and had difficulty moving at all.

28. According to BOP records, in the evening hours of Saturday, January 9, Defendant McGee examined Plaintiff, recording that Plaintiff had a temperature of 100.7 degrees Fahrenheit and that Plaintiff reported his pain level at 10 out of 10.

29. This encounter on January 9—two weeks after Plaintiff first began telling medical staff that he was in pain—marked the first time that a medical provider palpated Plaintiff's abdomen or took his temperature.

30. Defendant McGee called the on-call physician's assistant, Defendant Leslee Brooks, telling Brooks that Plaintiff had an elevated pulse and temperature and had complained of abdominal pain for over a week. Brooks ordered a COVID-19 swab and a Tylenol prescription.

31. Defendant Brooks failed to document what, if anything, she did to determine why she took this course of action and no other, and did not document anything indicating that she communicated with any other medical provider about Plaintiff's medical condition.

32. At no point did Defendant Brooks personally examine or even speak to Plaintiff. She did not take or order any laboratory tests, nor did she document any communication with a physician to urge them to take or order such tests.

33. On January 9, 2021, Defendant Brooks failed to send Plaintiff to the hospital, and/or failed to communicate with a physician, including to inform them that Plaintiff should be sent to the hospital, where competent medical providers would have properly assessed and treated the condition underlying his symptoms.

34. Defendant Brooks made no record reflecting that she in any way supervised or monitored the conduct of Defendants Richardson or McGee with respect to Plaintiff.

35. Defendant Brooks did not review and electronically sign Defendant McGee's records from Plaintiff's treatment on January 9 until January 15, after Plaintiff had already been hospitalized.

36. On January 9, 2021, after receiving Brooks' orders for a COVID-19 swab and Tylenol, Defendant McGee instructed Plaintiff to "drink plenty of fluids, avoid food consumption, and report back to medical tomorrow morning for reevaluation." He prescribed Tylenol and sent Plaintiff away.

37. Defendant McGee made no record reflecting that he informed Defendant Brooks or a physician that he had seen Plaintiff in pain multiple times over the preceding weeks, that Plaintiff reported his pain level was at 10 out of 10, that he had observed Plaintiff requiring help from other inmates to walk, or that Plaintiff had previously been prescribed Tylenol and medications for constipation that did not alleviate his symptoms.

38. On January 9, 2021, Defendant McGee did not take or order any laboratory tests, nor did he document any communication with Defendant Brooks or a physician to urge them to take or order such tests.

39. On January 9, 2021, Defendant McGee failed to send Plaintiff to the hospital, and/or failed to communicate with Defendant Brooks or a physician that Plaintiff should be sent to the hospital, where competent medical providers would have properly assessed and treated the condition underlying his symptoms.

40. In fact, there is no record that any BOP medical provider ever notified a physician about Plaintiff's symptoms until after he was already hospitalized, and there is no record that a physician ever examined or treated him.

41. On the morning of Sunday, January 10—over two weeks after he first reported pain to a medical provider—Plaintiff was examined in his bunk by Nurse J. Hughes, who recognized that Plaintiff's life depended on his immediate transfer to a hospital.

42. Finally, at Nurse Hughes's urging, Plaintiff was approved for transfer to Heartland Regional Medical Center's emergency room.

43. Plaintiff was unable to walk, so two of his fellow prisoners helped carry him to the car that would take him to the hospital—nobody called an ambulance. Correctional officers drove Plaintiff to the hospital and dropped him off at the door.

44. At the hospital, the doctor who performed Plaintiff's initial examination recorded that he was "in obvious distress" and "obviously ill." The doctor's examination of Plaintiff's abdomen revealed "severe" distension and "severe" abdominal tenderness upon palpation.

45. After laboratory and other testing, Plaintiff was diagnosed with acute appendicitis with generalized peritonitis—an infection of the abdominal cavity—perforated viscus, and severe sepsis—all life-threatening conditions.

46. Plaintiff was placed in the intensive care unit (ICU) and his condition was marked as critical and "a certified medical emergency." Plaintiff was given antibiotics and fentanyl and other narcotic painkillers for his pain.

47. Plaintiff underwent emergency exploratory surgery and ultimately an appendectomy on January 10, the day he arrived at the hospital. The surgery confirmed that Plaintiff's appendix had ruptured.

48. Plaintiff remained in the hospital for two weeks, spending over a week in critical condition in the ICU, intubated and sedated, breathing through a ventilator and being fed through tubes.

49. While in the hospital and unable to move, Plaintiff developed a bed sore on his left buttocks that causes him discomfort and disfigurement to this day.

50. A second surgery was required to wash out the infection and partially close Plaintiff's abdomen.

51. The surgeries left Plaintiff with a long and permanent scar from his upper abdomen to his pubic area.

52. As a result of the delay in treatment of the ruptured appendix, Plaintiff developed diastasis recti, a condition where the large abdominal muscles separate, causing a permanently protruding stomach, which may require both physical therapy and surgery to correct.

53. Plaintiff continues to suffer other adverse effects from his ordeal, including pain—particularly while lifting heavy objects and during sex—fatigue after exertion, overheating, shortness of breath, and nausea.

54. As a direct and proximate result of Defendants' acts, omissions, policies or absence of policies, Plaintiff suffered, *inter alia*, permanent injury, scarring, pain, suffering, sleep difficulties, and distress, as more fully described above.

## COUNT I – *Bivens*
## Eighth Amendment – Inadequate Medical Care

55. Paragraphs 1-54 of this Complaint are incorporated as if restated fully herein.

56. In the manner described more fully above, Defendants failed to provide Plaintiff with adequate medical care for his serious medical condition, violating Plaintiff's right under the Eighth Amendment to be free from cruel and unusual punishment.

57. The misconduct described in this count was undertaken with deliberate indifference to plaintiff's rights and for no legitimate penological purpose.

58. As a result of the misconduct described in this count, plaintiff suffered damages.

WHEREFORE, pursuant to the Eighth Amendment and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), Plaintiff demands actual or compensatory damages against the

Defendants, and because they acted maliciously, wantonly, or oppressively, punitive damages against the Defendants in their individual capacities, plus the costs of this action, plus attorneys' fees and such other and additional relief as this Court deems equitable and just.

## COUNT II – *Bivens*
### Eighth Amendment – Unconstitutional Policies

59. Paragraphs 1-54 of this complaint are incorporated as if restated fully herein.

60. The violations of Plaintiff's constitutional rights under the Eighth Amendment to the United States Constitution and his damages were directly and proximately caused by the actions and/or inactions of Defendant Schreiber and/or Defendant Harbison, who:

   a. failed to establish and/or implement treatment protocols, policies, practices, and procedures to ensure that individuals detained at SCP Marion receive appropriate medical care for serious medical needs;

   b. failed to establish and/or implement treatment protocols, policies, practices, and procedures to ensure that individuals detained at SCP Marion receive appropriate medical care for serious medical needs, and if such care could not be provided at the camp, to ensure that they received appropriate medical care outside the camp;

   c. failed to adequately and appropriately monitor the deteriorating medical conditions of individuals detained at the camp;

   d. failed to ensure through training, supervision, and discipline that medical staff at SCP Marion, in necessary circumstances, make a referral for health care services outside the camp;

   e. failed to ensure through training, supervision, and discipline that medical staff properly respond to inmates' deteriorating medical conditions;

    f.    failed to ensure that medical providers were adequately and appropriately supervised and monitored by appropriately licensed medical providers;

    g.    possessed knowledge of deficiencies in the policies, practices, customs, and procedures concerning prisoners at SCP Marion, and approved and/or deliberately turned a blind eye to these deficiencies.

54. These failures and deficiencies as identified above manifested deliberate indifference to the constitutional rights of the incarcerated men, including Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant Schreiber and Defendant Harbison for compensatory damages, plus costs and attorneys' fees and whatever additional relief this court finds equitable and just.

## JURY DEMAND

Plaintiff Kevin Brooks demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: December 1, 2022                                      Respectfully Submitted,

<u>s/ Janine L. Hoft</u>
Janine L. Hoft
Jan Susler, Nora P. Snyder
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave., 3rd floor
Chicago, IL 60642
773.235.0070

Attorneys for Plaintiff Kevin Brooks