IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN BROOKS, | |
| Plaintiff, | |
| v. | No. 22-cv-6738 |
| JOSH RICHARDSON, *et al.* | Judge Franklin U. Valderrama |
| Defendants. | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Kevin Brooks (Brooks), while a prisoner at SCP Marion, a minimum-security work camp, experienced sharp abdominal pain over the course of two weeks, resulting in an emergency surgery for acute appendicitis. R.[1] 1, Compl. Brooks filed this action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 408 U.S. 388 (1971) against Family Nurse Practitioner Josh Richardson (FNP-C Richardson), Nurse Bryant McGee (Nurse McGee), Physician's Assistant (PA) Leslee Brooks (PA Brooks), Health Services Administrator Dr. Elizabeth Harbison (Dr. Harbison), and Camp Administrator Melissa Schreiber (Schreiber) (collectively, Defendants), for failing to provide him with adequate medical care in violation of the Eighth Amendment. *Id*. Defendants move to dismiss Brooks' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 16, Mot. Dismiss. For the reasons that follow, Defendants' motion to dismiss the Complaint is granted.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

## Background[2]

In December 2020, Brooks was a federal prisoner at SCP Marion, a minimum-security satellite work camp at the United States Penitentiary Marion in Marion, Illinois. Compl. ¶ 7. On December 26, 2020, Brooks began experiencing sharp abdominal pain. *Id*. ¶ 8. Two days later Brooks sought medical care from Nurse McGee for his pain, who gave him Tylenol but did not conduct a physical examination. *Id*. ¶ 11. Due to his persistent pain, on January 5, 2021, Brooks was seen by FNP-C Richardson, who listened to Brooks' abdomen and recorded hearing hypo-active bowel sounds. *Id*. ¶ 14. Richardson did not request any diagnostic tests, lab tests, nor consult with a physician. *Id*. ¶ 16. Richardson concluded that Brooks was suffering from constipation and provided over-the-counter laxatives. *Id*. ¶ 18. Brooks took the first dose of the laxative in Richardson's presence, after which Brooks vomited a gray and green substance. *Id*. ¶ 19. Richardson instructed Brooks to return the following day if his symptoms did not improve. *Id*.

Brooks' pain continued to worsen, to the point that he was no longer able to walk under his own power, prompting other inmates to help transport him to the sick call on a gurney. Compl. ¶¶ 20–21. There, Nurse McGee and FNP-C Richardson examined Brooks, determined he had COVID-19, provided him with Tylenol, and sent him away. *Id*. ¶ 22. Neither Nurse McGee nor FNP-C Richardson performed any tests, ordered any lab tests, or referred Brooks to a physician. *Id*. Afterward, Brooks laid in bed for days unable to perform his normal activities or work assignments. *Id*.

---

[2]The Court accepts as true all the well-pled facts in the Complaint and draws all reasonable inferences in favor of Brooks. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

¶ 24. Camp Administrator Schreiber observed Brooks lying in bed in pain and reassured him that he would receive medical attention. *Id.* ¶ 25. On January 9, 2021, Nurse McGee examined Brooks, who described his pain level as a 10 out of 10 and documented his temperature as 100.7 degrees Fahrenheit. *Id.* ¶ 28. Nurse McGee notified PA Brooks, who then ordered a COVID-19 swab and prescribed Brooks Tylenol. *Id.* ¶ 30. PA Brooks did not examine Brooks, nor did she order any lab tests or refer him to a physician. *Id.* ¶ 32. Nurse McGee then instructed Brooks to drink fluids, avoid food, and return in the morning for reevaluation. *Id.* ¶ 36. The next day, Brooks was reexamined by Nurse Hughes who recommended Brooks be immediately transferred to a hospital due to his condition. *Id.* ¶¶ 41–42.

At the hospital, the doctor's initial examination of Brooks revealed severe distension and abdominal tenderness. Compl. ¶ 44. Brooks was diagnosed with acute appendicitis with generalized peritonitis, a perforated viscus, and severe sepsis—all life-threatening conditions. *Id.* ¶ 45. Brooks underwent an appendectomy, which confirmed that his appendix had ruptured. *Id.* ¶ 47. Post-surgery, Brooks remained in the hospital for two weeks, spending one week in critical condition in the intensive care unit (ICU), intubated and sedated. *Id.* ¶ 48. Brooks underwent a second surgery to wash out the infection and partially close his abdomen. *Id.* ¶ 50. Brooks developed diastasis recti, a condition in which the large abdominal muscles separate, causing a permanently protruding stomach. *Id.* ¶ 52.

Brooks subsequently filed this action, pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 408 U.S. 388 (1971), in which the Supreme

3

Court recognized an implied damages remedy against federal officers for certain constitutional violations. *Id.* Brooks alleges that FNP-C Richardson, Nurse McGee, PA Brooks, Dr. Harbison, and Schreiber failed to provide him with adequate medical care in violation of the Eighth Amendment (Count I) and that Dr. Harbison and Schreiber failed to establish or implement proper policies and procedures to ensure Brooks' adequate medical care in violation of the Eighth Amendment (Count II). Compl. Brooks seeks monetary damages for the constitutional violations. *Id.* ¶ 58.

Defendants move to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a cause of action. Mot. Dismiss. The fully briefed motion is before the Court.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The

4

allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

Defendants move to dismiss Brooks' *Bivens* claim arguing that Brooks' claims constitute a new *Bivens* context, and Congress, not the courts, is the proper entity to create a new cause of action in this circumstance. R. 17, Memo. Dismiss at 2.

To properly contextualize the nature of a *Bivens* claim, a brief overview of the Supreme Court's jurisprudence on the topic is in order. In *Bivens*, the Supreme Court recognized for the first time that an implied right of action for an individual whose Fourth Amendment right of freedom from unreasonable search and seizure was violated by the Federal Bureau of Narcotics. 403 U.S. at 390. There, federal agents entered Bivens' home and arrested him without a warrant. *Id*. at 389. The agents conducted the search in front of Bivens' family and threatened to arrest his wife and children. *Id*. The Court held that Bivens could sue for damages for the Fourth Amendment violation despite the lack of any federal statute authorizing such a suit. *Id*. at 397. The Supreme Court subsequently extended *Bivens* in "two additional contexts: a claim against a member of Congress under the Fifth Amendment for workplace discrimination, *Davis v. Passman*, 442 U.S. 228 (1979), and a claim against federal prison officials under the Eighth Amendment for failure to provide adequate medical care, *Carlson v. Green*, 446 U.S. 14 (1980)." *Snowden v. Henning,* 72 F. 4th 237, 238–39 (7th Cir. 2023).

5

Over the years, however, *Bivens* claims have come to be viewed skeptically by the Supreme Court. *Bivens* was decided during what the Supreme Court has described as an "*ancien regime* [during which] the Court assumed it to be a proper judicial function to provide such remedies as are necessary to make effective a statute's purpose." *Ziglar v. Abbasi*, 582 U.S. 120, 131–32 (2017) (cleaned up).[3] In fact, the Court recently stated that if it were "called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Egbert v. Boule*, 596 U.S. 482, 502 (2022). This shift is premised on the principle that "[w]hen an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them." *Abbasi*, 582 U.S. at 135–36 (cleaned up). Today, "a cause of action under *Bivens* is a disfavored judicial activity" for which the "watchword is caution." *Egbert*, 596 U.S. at 491 (cleaned up).

To determine whether a *Bivens* remedy is available, courts must engage in a two-step inquiry. *Egbert*, 596 U.S. at 492. First, a court asks if the claim "presents a new *Bivens* context," meaning that the case is "meaningfully different from the three cases in which the [Supreme] Court has implied a damages action." *Id.* (cleaned up). A context may be new when a new category of defendants is involved. *Snowden*, 72 F. 4th at 242. "If the context is not new, then the claim may proceed." *Id.* at 239. A non-exhaustive list of meaningful differences include:

---

[3] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations,* 18 Journal of Appellate Practice and Process 143 (2017).

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 582 U.S. 120 at 139–40.

If the context is new, the court must then determine if it is appropriate to imply a new private right of action to that claim. *Snowden,* 72 F. 4th at 239. In *Abbasi*, the Supreme Court reiterated that a *Bivens* remedy "will not be available if there are 'special factors' counselling hesitation in the absence of affirmative action by Congress." *Abbasi,* 582 U.S. at 136 (cleaned up). The "special factors" inquiry, explained the Court, "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* "Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is 'Congress'—as it will be in most every case, no *Bivens* action may lie." *Egbert*, 596 U.S. at 491–92 (cleaned up). Among those factors that courts may consider is whether alternative remedies exist for addressing the constitutional violations raised by the claims of a particular case. That is, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi*, 582 U.S. at 137. "If there is even a single reason

7

to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492 (cleaned up).

Recently, the two-step process for evaluating requests to imply new constitutional causes of action has been called into question. *Sargeant v. Barfield*, 87 F.4th 358, 364 (7th Cir. 2023). In *Egbert*, the Supreme Court explained that, "[w]hile our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 596 U.S. at 492. "This is because the final two step-one considerations—the risk of disrupting other branches and the presence of special factors that prior cases did not consider—are similar to the second step." *Sargeant*, 87 F.4th at 364.

It is within this framework that the Court analyzes whether Brooks may assert a *Bivens* claims under the Eighth Amendment. The Court first addresses Count I as to all Defendants, then addresses Count II regarding Defendants Dr. Harbison and Schreiber.

I. **Count I – *Bivens* Claim for Inadequate Medical Care**

The Court's first task is to figure out whether Brooks is attempting to apply *Bivens* in a new context in Count I. In other words, whether Brooks' claim is "meaningfully different" from one of the *Bivens* trilogy of cases. If the claim does not arise in a new *Bivens* context, then the analysis ends here, and the claim can proceed. If the claim arises in a new *Bivens* context, then the analysis moves to the second step of the inquiry: whether there are special factors that counsel hesitation against

8

implying the remedy. Brooks alleges that Defendants acted with deliberate indifference of his serious abdominal pain resulting in an emergency appendectomy, in violation of the Eighth Amendment. Compl. ¶¶ 56–57.

Defendants contend that Brooks cannot maintain his claim in Count I because it arises in a new *Bivens* context, and as such, Congress, not the courts, is the proper entity to create a cause of action under these circumstances. Memo. Dismiss at 2. Defendants maintain that Congress has already created multiple remedial structures to address the kinds of injuries alleged by Brooks, namely the Bureau of Prisons' (BOP) administrative remedy program and the Federal Tort Claims Act (FTCA). *Id.* at 4. The BOP's administrative remedy program, submit Defendants, allows an inmate to file grievances "relating to any aspect of his/her own confinement." *Id.* (citing 28 C.F.R. §542.10). True, concede Defendants, the BOP's administrative remedy program does not provide a damages remedy. No matter because Brooks has a damages remedy available in the form of the FTCA. *Id.* at 5. Between the BOP's administrative remedy program and the FTCA, inmates in Brooks' situation have multiple alternative processes to protect their interest in obtaining adequate medical care. *Id.* at 6.

Defendants further assert that Brooks cannot compare his claims to *Carlson v. Green*, 446 U.S. 14 (1980), where the Supreme Court recognized a claim against federal prison officials under the Eighth Amendment for failure to provide adequate medical care. Memo. Dismiss at 8. In short, Defendants argue that there are factual distinctions as well as multiple special factors, particularly the presence of

9

alternative remedial structures such as the BOP administrative remedy process and the FTCA, that distinguish Brooks' claims from *Carlson*. *Id.*

In *Carlson*, prison officials allegedly knowing of the seriousness of an inmate's chronic asthma, kept the inmate in an inadequate facility against doctors' advice, failed to give him competent medical care for about eight hours after his first asthma attack, administered contra-indicated drugs, attempted to use an inoperative respirator, and delayed his transfer to an outside hospital. 446 U.S. at 16 n.1. The inmate allegedly died as a result of these acts and omissions. *Id.* The inmate's estate brought suit, alleging that the prison officials violated the decedent's Eighth Amendment rights by giving inadequate medical care. *Id.* The Supreme Court recognized a *Bivens* cause of action under the circumstances of that case. *Id.* at 25.

As previewed by Defendants, Brooks maintains that his claims are analogous to *Carlson*, and therefore, do not arise in a new *Bivens* context. R. 19, Resp. at 2. Brooks asserts that the failure and delay in treating his severe abdominal pain and ruptured appendix is the same as the failure and delay in treating plaintiff's asthma attack in *Carlson*. Resp. at 4.

The Court agrees with Defendants that the differences present in Brooks' claim are meaningful enough to constitute a new *Bivens* context. First, as Defendants point out, Brooks alleges an ongoing failure to treat his abdominal pain over the course of fourteen days resulting in ongoing injuries, while *Carlson* involved a lack of appropriate medical care during a single asthmatic episode lasting eight hours and resulting in death. R. 20, Reply at 2. Second, Brooks' claim is distinguishable from

10

*Carlson* because Brooks alleges two supervisors, Health Services Administrator, Dr. Harbison and Camp Administrator, Schreiber, failed to perform their administrative and supervisory roles, which *Carlson* did not allege. True, there are some high-level similarities between this case and *Carlson*, but there are meaningful differences which preclude an extension of *Bivens*.

Moreover, the presence of special factors, namely, the alternative remedial structures create a new *Bivens* context. As the Seventh Circuit acknowledged in *Sargeant* and as discussed above, the two-step analysis was somewhat condensed by the Supreme Court's decision in *Egbert*. 87 F.4th at 364. Defendants argue that the Court must consider "special factors" that counsel hesitation in step one, whereas Brooks argues that remains a consideration only if his claims arise in a "new context." Reply at 2; Resp. at 3. But as established by the Supreme Court in *Abbasi,* a difference that is meaningful enough to create a new context is the "presence of special factors that previous *Bivens* cases did not consider." *Abbasi*, 582 U.S. 120 at 140. Since *Carlson*, the Supreme Court has viewed alternative remedy programs as a special factor which alone can foreclose a *Bivens* claim. *See Egbert,* 596 U.S. at 494 ("If there are alternative remedial structures in place, that alone, like any other special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action.") (cleaned up). Accordingly, the availability of alternative remedy programs in this case is a special factor that creates a new *Bivens* context.

Brooks does not argue that alternative remedy programs are unavailable to him. And while Brooks cites numerous out-of-District cases in which a *Bivens* claim

11

has been allowed to proceed, *see, e.g.*, *Thomas v. Ahmed*, 2023 WL 2499597, at *5 (S.D. Ill. Mar. 14, 2023) (finding that plaintiff's claim of inadequate medical treatment for a knee injury over the course of three years presented the same context as *Carlson*); *Rodriguez v. Ahmed*, 2023 WL 361207, at *4 (S.D. Ill. Jan. 23, 2023) (holding that the plaintiff's claim of inadequate medical care of a scalp condition, hernia, back injury, diabetes, and elevated liver enzymes was not meaningfully different from *Carlson*); *Pitts v. Bagwell*, 2022 WL 1172159, at *5 (S.D. Ill. Apr. 20, 2022) (finding that the denial of an inhaler for seven months for plaintiff's chronic asthma was sufficient for a *Bivens* claim while claims of inadequate care for anxiety, hypertension, back pain, acid reflux and other ailments were insufficient), he does not offer any where a court acknowledged the existence of such alternative remedies and found a valid *Bivens* claim.

In addition, the Court agrees with Defendants, that the Count I *Bivens* claim cannot be brought against either Dr. Harbison or Schreiber. In order for a *Bivens* claim to proceed against Dr. Harbison and Schreiber, Brooks must allege the personal involvement of each Defendant. *See Abbasi*, 582 U.S. at 140–41. ("[A] *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others."). Brooks does not allege that Dr. Harbison or Schreiber inadequately provided or failed to provide him with medical care. Brooks only mentions that Schreiber observed him lying in bed in pain while on a routine walk-through. Compl. ¶ 25. Further, Brooks makes no reference as to any interaction with Dr. Harbison nor does he allege how Dr. Harbison acted or failed to act in regard to his medical care.

Brooks cannot bring a claim against Dr. Harbison or Schreiber simply for their supervisory positions at the prison facility. *See Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011) ("a defendant cannot be liable under *Bivens* on the basis of respondeat superior or supervisory liability") (cleaned up). Additionally, as stated above, *Abbasi* established that the rank of the officers involved is a meaningful difference that presents a new *Bivens* context. *Id.* at 140. Extending Brooks' claim to Dr. Harbison and Schreiber would broaden the application of *Bivens* to include a new category of defendants, which has been consistently refused by the courts. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (stating that "[s]ince *Carlson* we have consistently refused to extend *Bivens* liability to any new context or new category of defendants").

All in all, because Brooks' claims arise in a new context, and Congress has already established alternative remedies that Brooks may pursue to redress any alleged harm, the Court will not extend *Bivens* into this new context and his Count I *Bivens* claims fails.

## II. Count II – *Bivens* Claims for Failing to Establish and Implement Appropriate Treatment Policies and Practices

The Court next addresses Brooks' Count II *Bivens* claims against Dr. Harbison and Schreiber. Brooks alleges that Dr. Harbison and Schreiber violated his Eighth Amendment rights by failing to establish and implement appropriate treatment protocols, policies, practices, and procedures regarding medical care at the SCP Marion prison facility. Compl. ¶¶ 59–60. Considering that a *Bivens* claim is not the appropriate method for challenging the prison's medical policies and procedures, the motion to dismiss as to Count II is granted.

Focusing on the first step of the inquiry, the Supreme Court has stated that "a *Bivens* action is not a 'proper vehicle for altering an entity's policy.'" *Abbasi*, 582 U.S. at 140 (2017) (quoting *Malesko*, 534 U.S. at 74). *Bivens* is concerned only with deterring the unconstitutional acts of individual federal officers, not with deterring the conduct of a policymaking entity. *See Malesko,* 534 U.S. at 71. Thus, Brooks' Count II claim is meaningfully different from the *Bivens* trilogy and arises under a new *Bivens* context.

Accordingly, the inquiry moves to the second step: whether there are special factors that counsel hesitation against implying the remedy. The "special factors" inquiry, "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi,* 582 U.S. at 136. There is reason to believe that Congress would be better positioned than the courts to weigh the costs and benefits regarding policy and procedure-making. *Abbasi*, 582 U.S. at 141 ("It is a significant step under separation-of-powers principles for a court to determine that it has the authority to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation."). This special factor alone forecloses the extension of *Bivens* into this context. For this reason, the motion to dismiss as to Count II is granted.

## Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss as to Counts I and II [16]. Civil case terminated.

Date: 3/31/2024

_____
United States District Judge
Franklin U. Valderrama